UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

YISROEL STERNBERG and
CHANA BECK,

     Plaintiffs,

vs.

SPIRIT AIRLINES, INC.,

     Defendant.
_____/

## **COMPLAINT**

Those ***"Retarded Jews"*** YISROEL STERNBERG ("Yisroel") and CHANA BECK ("Chana")[1] sue Defendant SPIRIT AIRLINES, INC. ("Spirit"). These so-called "Retarded Jews" simply wanted a peaceful flight to Fort Lauderdale and to enjoy the start of their family vacation. What began as Spirit's misunderstanding about a car seat, ended with Yisroel and Chana being forced to endure old-fashioned anti-Semitism and racism at the hands of Spirit, Spirit calling the police called on the Strernbergs, their return tickets rescinded, and to top it off—a lifetime ban from Spirit. Their crime? Being visibly religious Jews.

## **JURISDICTION**

1. This action against Spirit arises under the Constitution and laws of the United States, and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*, as amended.

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 because the Complaint alleges a federal claim and requires the resolution of substantial questions of federal law.

3. Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiffs'

---

[1] Collectively, the "Sternbergs" or "Plaintiffs."

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

state law claim because the state claim is so related to the federal claims that it forms part of the same case or controversy under Article III of the United States Constitution.

4. Further, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (a) Plaintiffs and Defendant are citizens of different states; and (b) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of the events and omissions complained of took place in this District.

## PARTIES

6. At all times relevant, both Mr. and Chana are citizens of New York, over the age of 18, and persons with standing to bring a claim under 42 U.S.C. § 1981.

7. Chana is 25-years-old, an Orthodox Jew, and married to Yisroel.

8. Yisroel is 28-years-old, an Orthodox Jew, and married to Chana.

9. Spirit is a Delaware corporation with its principal place of business and headquarters of Spirit located in Broward County, Florida.

10. Spirit is the seventh largest airline/carrier in America operating more than 600 flights each day to 73 different destinations in the United States, Latin America, and the Caribbean Islands.

11. In 2018, Spirit was ranked as one of the lowest ranked airlines in the United States by Consumer Reports.

## GENERAL ALLEGATIONS

12. Through this Background and General Allegations section, the Sternbergs provide the general substance of certain factual allegations. The Sternbergs do not intend that this section provide in exact detail, or necessarily in chronological order, any or all allegations. Rather, the Sternbergs intend that this section merely provide Spirit fair notice of the general nature and

substance of their allegations.

13. The attire, appearance, and conduct of the Sternbergs outwardly revealed to Spirit, as well as the public at-large, that they (the Sternbergs) were Orthodox Jews.

14. On information and belief, and at all times material hereto, Spirit knew that the Sternbergs were Jews based upon their outward appearance.

15. On January 8, 2019, the Sternbergs, along with their 6-week-old, 2-year-old, and 3-year-old daughters, arrived at Newark Liberty International Airport ("EWR") to board Spirit Airlines flight No. 521, a non-stop flight to Fort Lauderdale, Florida (the "Flight"). The Flight was scheduled to depart at 6:00 A.M. and arrive in Fort Lauderdale, Florida, at 9:00 A.M.

16. In light of the fact that the Sternbergs were traveling with their 6-week-old daughter, the Sternbergs purchased an FAA-approved Doona™ Infant Car Seat (the "Car Seat") to ensure their infant daughter's in-flight safety.

17. The Sternbergs—although having the option of traveling with a lap child—purchased a ticket/seat[2] aboard the Flight for the Car Seat.

18. The Sternbergs chose to purchase the Car Seat because of its unique capabilities, safety, and certifications. In particular, the Car Seat is a compact wheeled-stroller that quickly and easily folds into an FAA-approved child restraint system for use onboard airline flights.

19. Once inside EWR, the Sternbergs presented the Car Seat to agents of Spirit twice—first at the ticket counter while checking their luggage and, again at the gate prior to boarding the Flight.

20. The Doona™ Infant Car Seat in question is unique in that it easily converts from a stroller to a car seat and is FAA-approved for onboard airline travel. Of course, Spirit was

---

[2] Airline Confirmation Code VFL94A.

3 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

completely wrong from the second they removed the Car Seat from the flight.

21. As set forth in 14 C.F.R. § 135, as summarized and clarified by InFO 09002 issued by the U.S. Department of Transportation, Federal Aviation Administration:

> No operator may prohibit a child … from using an approved [Child Restraint System ("CRS")] when the parent or guardian purchases a seat for the child, the child is accompanied by a parent or guardian and the child is within the weight limits for the CRS. If an approved CRS, for which a ticket has been purchased, does not fit in a particular seat on the aircraft, it is the responsibility of the aircraft operator to accommodate the CRS in another seat….
>
> ***
>
> An operator may have policies, based on safe operating practices that establish certain seat locations for passengers who use a CRS on a specific aircraft. However, **prohibiting the use of a CRS (if a ticket has been purchased) when there are seats on the aircraft, in the same class of service, where the CRS could be used safely is not consistent with the requirements stated in** [14 C.F.R. §§] **121, 125 and 135**.

(emphasis added).[3]

22. Upon Spirit's initial hesitation, The Sternbergs twice-explained to agents of Spirit three things: (1) the Car Seat was FAA-approved; (2) the Car Seat was for their 6-week-old daughter; and (3) the Sternbergs had purchased a ticket for the Car Seat. In so doing, the Sternbergs took great care in explaining to agents of Spirit that the Car Seat quickly converted into an FAA-approved child restraint system, as well as directed the agents of Spirit Airlines to the labels, stickers, and seals directly affixed to the exterior of the Car Seat revealing that the Car Seat was, in fact, approved by the FAA for such inflight use. The Sternbergs further demonstrated to the agents of Spirit Airlines how easily and quickly the Car Seat folded from a wheeled-stroller into a carriage for an airplane seat.

---

[3] *See* https://www.faa.gov/other_visit/aviation_industry/airline_operators/airline_safety/info/all_infos/media/2009/inFO09002.pdf

4 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

23. Both times, agents of Spirit, including a staff supervisor, responded by reassuring the Sternbergs that they would be able to board with the Car Seat aboard the Flight.

24. Once onboard the Flight, the Sternbergs fastened the Car Seat to her daughter's window seat, as instructed by the Car Seat's protocol, safely and securely buckled their daughter into the Car Seat, and then prepared for the flight to Fort Lauderdale. Upon noticing the Sternbergs, however, the Spirit Airlines flight crew immediately began a discriminatory campaign against the Sternbergs.

25. First, the flight crew irately told the Sternbergs that the Car Seat was not permitted onboard. The Sternbergs attempted to explain to the harassing flight crew that the Car Seat was an FAA approved child restraint system, as well as approved by the agents of Spirit Airlines inside the terminal, but it was of no use, as the decision to discriminate against the Sternbergs, simply because they were Jewish, had already been made by the flight crew.

26. At that point, a Complaint Resolution Official (CRO) from Spirit was summoned who stated that the Sternbergs would be allowed to keep the Car Seat. Perhaps even more upset that these Jews had her contradicted by the CRO, the flight attendant became even more antagonistic toward the Sternbergs. After the CRO left, the lead female flight attendant responded that she (the flight attentat) did not care what anyone else said regarding the Car Seat because she was not allowing it (the Car Seat) on "her plane."

27. Not wanting to make a big fuss, the Sternbergs had little choice but to have the Car Seat stowed below-deck. No alternative child restraint system was offered to the Sternbergs and, as a result, Chana held their six-week old daughter for the duration of the Flight.

28. During the flight, because Chana needed to hold their infant daughter safely and carefully for the entire flight, Yisroel moved to the empty seat adjacent to Chana to help, as well as to supervise their other two children. In response to this, a male flight attendant, Jose, came

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

running over to berate Yisroel for sitting in the row with a lap child because, purportedly, the row did not have enough oxygen masks for everyone. Despite being shocked by the tone and aggression of Jose, Yisroel immediately and dutifully got up and moved right across the aisle to his assigned seat.

29. Once in his assigned seat, Yisroel asked Jose for his full name, which Jose refused to provide. Yisroel then asked for the name of the head flight attendant, to which Jose responded by yelling "SHUT UP" to Yisroel. Once again shocked by the conduct of the flight crew, Yisroel asked Jose not to speak to him in that manner. Jose responded by saying he can speak to Yisroel however he wanted and, even further, that there "would be law enforcement waiting" for the Sternbergs in Fort Lauderdale. Having done absolutely nothing wrong, Yisroel, as upset as he was, decided to let it go and did not respond to what he assumed to be an empty, off-the-cuff threat.

30. In reality, however, without provocation or justification, the Spirit flight crew had, in fact, called the police on the Sternbergs.

31. According to the audio from the 911 call placed by Spirit, the complaint was that the Sternbergs were "being disruptive and cursing at the flight attendants and stuff like that."

32. Upon landing in Fort Lauderdale, the pilot got on the intercom and asked the entire flight to remain seated until further notice. A few minutes later, to the Sternbergs' shock and horror, they were escorted off the plane, guarded by two Broward Sheriff Deputies, while all the other passengers deplaned and walked right past them, staring and wondering what was going on.

33. Per the body camera footage of the responding Broward Sherriff deputies, the lead flight attendant could not articulate any valid reason for the police to have been called and the officers refused to board the plane.

34. Upon information and belief, Spirit maintains a flight protocol with which it trains its staff of how to deal with disruptive clients. According to Spirit's own policies and procedures,

6 | P a g e

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

under no circumstances is law enforcement to be called for mere disruptive behavior. Even if the Sternbergs were being non complaint and cursing at the flight attendant—they most certainly did not—there was absolutely no reason to call the police and to ban them for life.

35. To this day, the Sternbergs have no idea what they did wrong other than what Spirit spokesman Derek Dombrowski incorrectly asserted to various press outlets as the "records indicate that this guest ignored flight and ground crew instructions multiple times, beginning with the boarding process and continuing through landing." This is simply false. To the contrary, the Sternbergs did whatever they could to help resolve the situation.

36. At the gate in Fort Lauderdale, the Sternbergs were subjected to incredible humiliation as the passengers who had deplaned and those in the lounge area stared at the couple surrounded by Spirit personnel and police. By this point, their three daughters were terrified and screaming as well.

37. Even further, upon deplaning, the Sternbergs were informed that their return flight to Newark was canceled by Spirit Airlines and that the Sternbergs were forever banned from all flights Spirit Airlines flights.

38. As they stood there, another passenger—whom the Sternbergs had never previously met—stopped and told the Sternbergs that he overheard the flight crew calling them "the retarded Jews.[4]" At that point, it all became crystal clear to the Sternbergs. The flight crew of the Flight was discriminating against them because the Sternbergs were Jewish.

---

[4] *See* FLIGHT ATTENDANT CALLS JEWISH FAMILY "THOSE RETARDED JEWS*"* (**Travel Pulse**, Published Jan. 11, 2019, *Yaron Steinbuch*) available at: https://www.travelpulse.com/news/airlines/flight-attendant-calls-jewish-family-those-retarded-jews.html); SPIRIT AIRLINES TURNED OUT FLIGHT INTO AN ANTI-SEMITIC NIGHTMARE: COUPLE. (**N.Y. Post**, Published Jan. 10. 2019) available at: https://nypost.com/2019/01/10/spirit-airlines-turned-our-flight-into-an-anti-semitic-nightmare-couple/; Flight attendant allegedly calls NY Orthodox couple 'retarded Jews' during fight (**Times of Israel**, Published Jan. 12, 2019, *Alex Temblador*).

39. All conditions precedent to the filing of this action have occurred.

## COUNT I
## VIOLATION OF § 1981

40. The Sternbergs repeat, reallege and incorporate by reference paragraphs 1-39 as though fully stated herein.

41. "The elements of a cause of action under § 1981 are (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute."[5]

42. As Jews, the Sternbergs are members of a "racial minority" as the term has been construed by the Supreme Court and Eleventh Circuit within the context of § 1981.[6]

43. At all times material, Spirit knew the Sternbergs were Jews and Spirit intentionally discriminated against the Sternbergs on this basis. As stated above, Spirit explicitly called the Sternbergs "retarded Jews," wrongfully prohibited the Sternbergs from using their FAA approved Car Seat, canceled the Sternbergs' tickets for their return flight home, and forever-banned the Sternbergs from flying with Spirit.

44. Spirit, by canceling the Sternbergs' return flight and forever banning the Sternbergs from all Spirit flights, wrongfully denied the Sternbergs the right to make and enforce a contract under which they had rights.

45. The Sternbergs had an absolute unqualified right to be treated equally by Spirit;

---

[5] Kinnon v. Arcoub, Gopman & Assocs., Inc., 490 F.3d 886, 891 (11th Cir. 2007) (internal quotation marks omitted).
[6] See Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604 (1987) (wherein the Supreme Court held that in enacting § 1981, "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."); Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1235 (11th Cir. 2000) (denying motion for class certification in § 1981 case because intent to discriminate based on Jewish identity would have to be shown on an individual basis); Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 617–18 (1987) (finding that Jews were a protected group that could state a claim under § 1982).

8 | P a g e
Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

however, because the Sternbergs are Jewish, Spirit intentionally discriminated against the Sternbergs. In so doing, Spirit denied the Sternbergs their right to travel, as well as make and enforce contracts, on the same terms as enjoyed by white persons in violation of 42 U.S.C. § 1981.

46. Spirit is liable for the actions of its employees under the doctrine of *respondeat superior.*

47. As a direct and proximate result of the discriminatory conduct of Spirit, the Sternbergs have suffered personal humiliation, loss of capacity for the enjoyment of life, mental anguish, and embarrassment justifying an award of compensatory damages and punitive damages, according to proof, from Spirit.

48. As a result of the deprivations of rights at the hands of Spirit, the Sternbergs have retained Rodal Law, P.A., and have agreed to pay Rodal Law, P.A., a reasonable fee. the Sternbergs are entitled to recover these reasonable fees from Spirit Airlines pursuant to 42 U.S.C. § 1988(b) and otherwise by law.

**WHEREFORE**, Plaintiffs CHANA BECK and YISROEL STERNBERG, demand judgment against Spirit Airlines for the above damages, attorney's fees and costs pursuant to 42 U.S.C. 1988(b) and for such further relief as this Court deems just and equitable.

*COUNT II*
**DEFAMATION**

49. The Sternbergs repeat, reallege and incorporate by reference paragraphs 1-39 as though fully stated herein.

50. Spirit, by and through its employees, explicitly and loudly called the Sternbergs "retarded Jew," and as a result thereof, multiple news publications have been released to the public echoing this slanderous statement. The statement that the Sternbergs were "retarded Jews" was heard by other Spirit Airlines employees, other passengers of the Flight, and now, the public at

9 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

large due to the new publications. The statement that the Sternbergs were "retarded Jews" was false and defamatory and had the natural tendency to injure the personal reputation and credibility of the Sternbergs.

51. Moreover, Spirit reported to various media outlets that the Sternbergs had been non-complaint and Spirit employees informed law enforcement that the Sternbergs had been cursing at the flight attendants. This is simply false.

52. The statement lacked good faith and was made intentionally and maliciously with the intent to injure and harm the Sternbergs. The statement did in fact cause the Sternbergs emotional distress, as well as personal humiliation, loss of capacity for the enjoyment of life, mental anguish, and embarrassment.

**WHEREFORE**, Plaintiffs CHANA BECK and YISROEL STERNBERG, demand judgment against Spirit Airlines for the above damages, including punitive, and for such further relief as this Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiffs CHANA BECK and YISROEL STERNBERG, respectfully, demand a trial by jury of all issues so triable.

Respectfully Submitted,

/s/ Yechezkel Rodal
**YECHEZKEL RODAL, ESQ.**
Florida Bar No. 91210
E-mail:chezky@rodallaw.com
**THOMAS J. PATTI, ESQ.**
Florida Bar No. 118377
E-mail:tom@rodallaw.com
RODAL LAW, P.A.
5300 N.W. 33rd Ave., Suite 219
Fort Lauderdale, Florida 33309
Phone: (954) 367-5308

*COUNSEL FOR PLAINTIFF*

10 | P a g e
**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com