UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

YISROEL STERNBERG and
CHANA BECK,

            Plaintiffs,                      CASE No.:  0:19-cv-61115

vs.

SPIRIT AIRLINES, INC.,

            Defendant.

_____ /

**DEFENDANT, SPIRIT AIRLINES, INC.'S, MOTION TO DISMISS**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant, SPIRIT AIRLINES, INC. ("Spirit"), by and through its undersigned counsel

and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7.1 of the Local

Rules for the Southern District of Florida, hereby files this Motion to Dismiss Plaintiffs,

YISROEL STERNBERG'S ("Sternberg") and CHANA BECK'S ("Beck") (collectively,

"Plaintiffs"), First Amended Complaint (the "Complaint")[1] and as grounds in support thereof

states:

### I.       INTRODUCTION

In January 2019, Plaintiffs and their children flew from Newark to Fort Lauderdale on a

Spirit flight. When, due to safety concerns, Spirit flight crew required Plaintiffs to stow a car seat

---

[1] Plaintiffs filed the Complaint on May 2, 2019, (ECF No. 1), and Spirit moved to dismiss the Complaint with a motion to dismiss on May 28, 2019, (ECF No. 9). Plaintiffs' response to the motion to dismiss was originally due on June 11, 2019, but Plaintiffs requested a seven-day extension for filing a response, which Spirit did not oppose. (ECF No. 10.) Perhaps recognizing the deficiencies in the Complaint, Plaintiffs attempted to remedy their defects by filing the First Amended Complaint. However, the additional information Plaintiffs added in their amended complaint does not correct the insufficiencies that plague Plaintiffs' claims.  The only substantive allegations Plaintiffs added consist of an incomplete name for the alleged third-party witness and a speculative statement that they just "know" there was discrimination based on their own personal experiences.

brought along for one of their children, Plaintiffs became confrontational and ignored instructions from Spirit's flight crew before and during the flight. Plaintiffs' conduct became so extreme during the flight that the flight crew felt it necessary to request that law enforcement meet the aircraft upon arrival.

Plaintiffs, apparently refusing to acknowledge their behavior during these events, now file suit claiming race discrimination under § 1981 for violation of Spirit's Contract for Carriage (the "Contract")[2] (Count I) and defamation (Count II). Spirit brings this motion to dismiss because Plaintiffs have failed to meet their burden at the pleadings stage. The First Amended Complaint provides thread-bare facts and assumptions in support of Plaintiffs' race discrimination claim, resting primarily on Plaintiffs' feeling of discrimination based on their experiences of being Jewish, and on an alleged comment from a male flight attendant that was allegedly overheard by another passenger. But neither Plaintiffs' unsupported assumptions nor the alleged comment (even assuming it was made) provide a plausible inference of discriminatory intent on the part of Spirit. Plaintiffs have failed to offer anything more than conclusory allegations to support their claim for relief based on race discrimination. The First Amended Complaint is similarly deficient on defamation, as Plaintiffs do not identify any actionable publications made by Spirit.

---

[2]    Attached as Exhibit "A", the Contract is an agreement between Spirit and its guests that details their rights and obligations relating to Spirit's carrier services. *See* Contract § 2.1.2 ("Subject to any applicable limitations or restrictions set forth herein, guests with confirmed reservations will be entitled to transportation between airports of origin and destination.") Although Plaintiffs do not include the Contract with the Complaint, the Contract should be considered part of the pleadings and considered under Fed. R. Civ. P. 12(b)(6) since it is central to Plaintiffs' § 1981 claim concerning the ability to make or enforce contracts. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (stating a court may consider documents attached to a motion to dismiss without converting into a motion for summary judgment when the documents are central to the plaintiff's claim and their authenticity is not disputed).

*Sternberg and Beck v. Spirit*
Motion to Dismiss

Accordingly, since Plaintiffs have failed to state claims upon which relief may be granted, the Court should grant Spirit's Motion to Dismiss.

## II.      FACTUAL BACKGROUND[3]

On January 8, 2019, Plaintiffs boarded Spirit Flight No. 521 in Newark, New Jersey, bound for Fort Lauderdale, Florida. (1st Am. Compl. ¶ 14, ECF No. 18.) Plaintiffs were flying with their three children, including a six-week-old daughter for whom Plaintiffs brought an FAA-approved Doona Infant Car Seat (the "Car Seat"). (*Id.* at ¶¶ 14–15.) Plaintiffs had purchased four tickets for the flight with one purchased ticket specifically for the Car Seat.[4] (*Id.* at ¶ 16.) Plaintiffs were initially allowed to board the Spirit aircraft with the Car Seat but were informed by the flight crew that they would have to stow the Car Seat for safety reasons. (*Id.* at ¶¶ 24–25.) Plaintiffs were very unhappy about the request and became argumentative and disruptive, but eventually the car seat was gate checked. (*Id.*) During the flight safety demonstration, the flight attendants noticed that one of the children was sitting on the floor and she advised Plaintiffs that the child had to be seated and secured with a seatbelt pursuant to federal safety regulations.

---

[3]      For purposes of Spirit's Motion to Dismiss only, Plaintiffs' well-pleaded allegations are taken as true, *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017); however, it should be noted that Spirit disputes Plaintiffs' characterization of the events and strongly disputes that it or its employees engaged in any form of discrimination.

[4]      The Contract provides guidelines for an FAA-approved car seat to be used on Spirit aircrafts. Contract, § 5.4.3. The Contract notes that some FAA-approved car seats may not always fit certain Spirit aircraft seats and provides a link for passengers to review minimum seat dimensions on Spirit aircraft so passengers may determine if their car seat will fit. *Id.* The Contract also notes that car seats that exceed the minimum seating dimensions of an aircraft may not fit or be safely accommodated on the aircraft seat. *Id.* If the car seat is not able to be safely accommodated on the aircraft—for instance, if it is too large for the aircraft seat—and the passenger purchased an extra seat that could not be utilized, Spirit will issue a refund without penalty. *Id.*

3

During flight, Plaintiff Sternberg moved from his assigned seat to another that was in the row with Plaintiff Beck. (*Id.* at ¶ 27.) This resulted in the entire party of five (including two children) sitting in a row of three seats. (*Id.*) A flight attendant informed Sternberg that federal regulations prohibited this movement since there would not be enough oxygen masks in the row for him and his family in the event of an emergency. (*Id.*) Despite numerous requests, Sternberg refused to move until he was advised that law enforcement would be called to meet the aircraft upon arrival. Sternberg continued to be disruptive throughout the flight. (*Id.*) Upon arrival in Fort Lauderdale, Plaintiffs deplaned and met with police officers and Spirit representatives regarding their behavior during the flight. (*Id.* at ¶ 32.)

Plaintiffs claim that as they were meeting with law enforcement, another passenger on Spirit Airlines Flight No. 521 identified only as "Binyamin" approached them. (*Id.* at ¶ 42.) This passenger allegedly stated that he had heard an unnamed male flight attendant refer to Plaintiffs as "retarded Jews" to an unnamed female flight attendant. (*Id.*) This individual, at least based on Plaintiffs' Complaint, did not indicate the names of the flight attendants, when this statement was made, or where he overhead the comment. (*See id.*) Plaintiffs admit that they did not hear any Spirit flight attendant utter a racial slur or epithet, but allege they could somehow just tell that they were being discriminated against because they are Jewish based on the female flight attendant's facial expression, body language, tone, language, and attitude. (*Id.* at ¶ 45.) Plaintiffs allege that the only conclusion based on their "over 50 years of collective experience with these issues"—Beck is 25 and Sternberg is 28—is that they were discriminated against because they were Jewish. (*Id.* at ¶¶ 7–8, 45.)

4

### III.   <u>LEGAL ARGUMENT</u>

#### A.   **Motion to Dismiss Standard**

Federal Rule of Civil Procedure 8(a)(2) requires that a claim for relief by a plaintiff contain "a short and plain statement of the claim showing that the pleader is entitled to relief" but "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3. In *Twombly*, the United States Supreme Court declared:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds for his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do….

*Id.* at 555 (quotations and citations omitted). Accordingly, a plaintiff must provide "[f]actual allegations [that are] enough to raise a right to relief above the speculative level . . . ." *Id.* (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004)).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance regarding the standard set forth in *Twombly*. The Court first reaffirmed that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court then continued by explaining that a claim is "plausible on its face" only if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The *Iqbal* decision results in a two-step approach to evaluate the sufficiency of a complaint. First, a court should "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, the court should take the "well-pleaded factual allegations . . . assume their veracity and then determine whether they

5

*Sternberg and Beck v. Spirit*
Motion to Dismiss

plausibly give rise to an entitlement to relief." *Id*. Only if the well-pleaded facts in the complaint, standing alone, establish the requisite "plausible" claim for relief will the complaint survive a motion to dismiss. But, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (citations omitted and emphasis added); *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) ("Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.").

Plaintiffs have not met their burden. The Complaint is supported by nothing more than conclusory statements that are insufficient to raise "a right to relief above the speculative level." Accordingly, the Court should dismiss the Complaint in its entirety.

**B.      Plaintiffs Fail to State a Legally Sufficient Claim under 42 U.S.C. § 1981**

Section 1981 prohibits intentional discrimination based on race or ethnicity in making and enforcing contracts. 42 U.S.C. § 1981. To state a claim for non-employment discrimination under § 1981, a plaintiff must allege that: (1) plaintiff is a member of a racial minority, (2) defendant intended to racially discriminate against plaintiff, and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1308 (11th Cir. 2010). Spirit does not dispute, for purposes of this Motion to Dismiss, that Plaintiffs have plead sufficient facts regarding the first and third elements of their § 1981 discrimination claim. However, Plaintiffs have failed to allege more than conclusory allegations to satisfy their burden on the second element required to pursue their discrimination claim.

The second element of a § 1981 claim requires that a plaintiff plead facts that demonstrate intentional discrimination. *Jackson*, 372 F.3d at 1270. "A showing of intent to

6

discriminate is a 'critical element' of a claim under § 1981." *Petrano v. Nationwide Mut. Fire Ins. Co.*, No. 1:12-cv-86-SPM-GRJ, 2013 U.S. Dist. LEXIS 45609, at *12 (N.D. Fla. Jan. 24, 2013) (citing *Rutstein v. Avis Rent-a-Car Systems, Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000)). Surviving a Rule 12(b)(6) motion to dismiss on a § 1981 discrimination claim requires the plaintiff to specifically "allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Rovt v. Big Al's Gun & Pawn, Inc.*, Civil Action No. 18-60880-Civ-Scola, 2019 U.S. Dist. LEXIS 4384, at *6 (S.D. Fla. Jan. 9, 2019). The pleading must provide sufficient facts to "enable the defendant to focus on the discriminatory practices in order to respond to the charges and assure the court that the claim has some basis in fact." *Brilliant Minds Strategies, Inc. v. S. Waste Sys., LLC*, No. 15-cv-81492, 2016 U.S. Dist. LEXIS 170320, at *19 (S.D. Fla. Dec. 7, 2016) (quoting *Jackson v. Bellsouth Telecomms., Inc.*, 181 F. Supp. 2d 1345, 1356 (S.D. Fla. 2001)).

Plaintiffs do not allege that other Jewish passengers were treated in a discriminatory manner or that non-Jewish passengers were treated differently than Plaintiffs. Plaintiffs also do not challenge Spirit's standard practice of taking actions to address disruptive behavior by passengers without regard to race or any other protected status. *See* Contract § 4.3. Nor do Plaintiffs plead allegations showing direct evidence of intentional racial discrimination on behalf of Spirit or its employees. *See Keane v. Fed. Express Corp.*, No. 16-20818-CV-JLK, 2017 U.S. Dist. LEXIS 117749, at *9 n.3 (S.D. Fla. July 27, 2017) (noting third-party witness overhearing manager referring to the plaintiff as "the Jew" outside of the plaintiff's presence was not direct evidence of discrimination). On the contrary, Plaintiffs admit they did not hear any Spirit employee make any racially discriminatory remark. Plaintiffs' § 1981 claim instead hinges on their feelings concerning the female Spirit flight attendant's discriminatory intent and the

7

allegation that another passenger heard a male flight attendant refer to Plaintiffs by their race at an unidentified time. Neither is sufficient to carry Plaintiffs' burden under the pleading requirements.

      i.     **Plaintiffs' Feelings Do Not Create a "Plausible Inference" Supporting Claims Under 42 U.S.C. § 1981**

Plaintiffs' belief that they were discriminated against does not satisfy the pleading standard under Rule 8. Plaintiffs claim they were discriminated against by a female Spirit flight attendant based on their experience being Jewish and perceived cues they claim demonstrate discrimination against Jewish people. Plaintiffs' do not identify what non-verbal actions the Spirit employee took that evidenced discriminatory intent against Jewish people or even provide any idea what these actions entail. Instead, Plaintiffs attempt to mask their assumptions under the guise of personal knowledge from their experience with discrimination. This does not provide the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiffs' allegations are nothing more than conclusory assertions that courts routinely find are insufficient to satisfy pleading requirements. *See, e.g.*, *Badal v. Ariens Co.*, No. 17-C-1704, 2018 U.S. Dist. LEXIS 101848, at *33 (E.D. Wis. June 18, 2018) (holding the "conclusory allegations that [defendant] is acting out of animus toward [plaintiffs'] race, ethnic background, or national origin are insufficient to create a plausible claim under Section 1981"); *Petrano v. Nationwide Mut. Fire Ins. Co.*, No. 1:12-cv-86-SPM-GRJ, 2013 U.S. Dist. LEXIS 45609, at *12 (N.D. Fla. Jan. 24, 2013) (dismissing § 1981 claim of racial discrimination where plaintiff provided no specific facts to

support a finding of intentional discrimination or racial bias); *Clarke v. Sopramco CV8*, No. 11-00643-CG-B, 2013 U.S. Dist. LEXIS 106157, at *9 (S.D. Ala. July 10, 2013) (same).[5]

> ### ii. The alleged racial comment does not constitute reasonable inference supporting liability

Plaintiffs' reliance on an alleged comment referring to Plaintiffs by their race or religion at an unidentified time does not satisfy the pleading burden for their § 1981 claim. Even assuming the alleged double-hearsay statement is true, it fails to provide a "plausible inference" that Spirit intentionally discriminated against Plaintiffs based on their racial identities. In fact, it makes little sense that Spirit would use its facially neutral policy regarding disruptive passengers to discriminate against a passenger because he or she is Jewish. Plaintiffs' pleading requires the Court to draw unwarranted deductions of fact about the alleged comment, and is contrary to the

---

[5] Courts have repeatedly dismissed discrimination lawsuits based on a plaintiff's belief of discrimination. *See, e.g.*, *Jacobs v. Biando*, 592 F. App'x 838, 841 (11th Cir. 2014) ("A threadbare allegation that an employee believes she was discriminated against because of her race is not enough to 'raise a right to relief above the speculative level.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 31–32 (3d Cir. 2014) ("As the District Court noted, other than Twillie's subjective belief that race played a role in these hiring decisions, she did not otherwise raise the inference that these decisions were based on discriminatory grounds."); *Brodt v. City of N.Y.*, 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014) ("In reviewing the sufficiency of a complaint's allegations, a plaintiff's 'feelings and perceptions of being discriminated against are not evidence of discrimination.'" (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999)); *Keathley v. Grange Ins. Co. of Mich.*, No. 15-CV-11888, 2017 WL 4422346, at *4 (E.D. Mich. Jan. 10, 2017) ("Plaintiff essentially anchors her claims of discrimination on Mr. Tison's subjective belief that Mr. Maxwell's benign statement was discriminatory. Mr. Tison's mere belief, however, is simply not sufficient for this Court to draw a *reasonable* inference of any discriminatory behavior made by Defendant or its agents against Plaintiff. Assuming the veracity of Plaintiff's allegations, they fail to raise Plaintiff's right to relief above the speculative level."); *Brogdon v. Univ. of Del.*, No. CV 13-1600-GMS, 2015 WL 167686, at *3 (D. Del. Jan. 13, 2015) ("Subjective beliefs, unsupported by factual allegations, cannot give rise to an inference of discrimination."); *Williams v. Wellness Med. Care, P.C.*, No. 11-CV-5566 KMK, 2013 WL 5420985, at *6 (S.D.N.Y. Sept. 27, 2013) ("Plaintiff relies on only his *belief* that Defendants were motivated by racial animus. But without sufficient facts, even the most sincerely held beliefs do not comprise a sufficient basis for withstanding a 12(b)(6) attack.").

*Sternberg and Beck v. Spirit*
Motion to Dismiss

*Iqbal/Twombly* pleading requirement that Plaintiffs plead facts showing the plausibility of relief as opposed to just possibility. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

Moreover, the reference to Plaintiffs as "Jews" does not show that Plaintiffs were being identified by their race as opposed to their religion. This distriction is important, as § 1981 does not provide protection for individuals based on religion. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Plaintiffs cannot recover under § 1981 for alleged discrimination based on religion, so failing to plead sufficient facts to support that the alleged comment was regarding their race means that their claim cannot proceed. The court's analysis in *Simoes v. Wintermere Pointe Homeowners Association* provides useful guidance on this issue. No. 6:08-CV-01384-LSC, 2008 U.S. Dist. LEXIS 86943 (M.D. Fla. Oct. 28, 2008). In *Simoes*, the court dismissed the plaintiff's § 1981 claim based on his Latin American heritage because the plaintiff failed to "allege any facts that would show [the defendants] acted with discriminatory intent based on the plaintiff's race or ethnicity." *See id*. at *7. The plaintiff alleged in support of his discrimination claim that one of the defendants made a comment that "Brazilians are really trouble." *Id*. Assuming that a claim of Latin American discrimination was actionable under § 1981, the court held that the plaintiff would need to show that the "Brazilians" statement was evidence of racial or ethnic animus as opposed to a country of origin. *Id. at* *7–8 n.3. The court proceeded to dismiss the claim since the "plaintiff's factual allegations [were] not sufficient to raise his right to relief against the [defendants] under § 1981 above the 'speculative level.'" *Id*. at *8–9.

The reasoning in *Simoes* is applicable to Plaintiffs' allegations in this matter. Here, Plaintiffs assume the alleged comment references their race instead of their religion without any factual bases as support. This conclusory averment does not establish the requisite "plausible" claim for relief. Plaintiffs failed to plead with reasonable particularity facts that support a

10

"plausible inference" that Spirit intended to discriminate against them based on their race. The Court should dismiss the claim as a result.

### C.      Plaintiffs Fail to State a Legally Sufficient Claim of Defamation

To establish a cause of action for defamation under Florida law, a plaintiff must show (1) publication; (2) falsity; (3) the actor acted with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement is defamatory. *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1250 (S.D. Fla. 2014). Plaintiffs alleged three statements as the basis for their defamation claim: (1) the alleged insult of Plaintiffs as recounted by another passenger; (2) a Spirit flight attendant's report to the police that Plaintiffs were "noncompliant," "made a big fuss," and would not listen to flight crew that was overheard by "others standing and sitting around"; and (3) Spirit's responses to media inquiries that Spirit's "records indicate that this guest ignored flight and ground crew instructions multiple times, beginning with the boarding process and continuing through landing." These statements are insufficient to maintain Plaintiffs' defamation claim.

### i.      The alleged insult is non-actionable rhetorical hyperbole

A defamation claim is not be actionable when the alleged defamatory statement is based on non-literal assertions of fact or rhetorical hyperbole that cannot reasonably be interpreted as stating actual facts about an individual. *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002). The term "rhetorical hyperbole" has been described as "imaginative expression" or "loose, figurative, or hyperbolic language." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006). While rhetorically hyperbolic statements may "at first blush appear to be factual, they cannot reasonably be interpreted as stating actual facts about their target." *Id.* at 1378–79. A

statement is considered rhetorical hyperbole when "the language itself negates the impression that the writer was seriously maintaining that the plaintiff committed the particular act forming the basis of the defamation." *Aflalo v. Weiner*, No. 17-61923-CIV, 2018 U.S. Dist. LEXIS 110134, at *11 (S.D. Fla. July 2, 2018) (quoting *Fortson*, 434 F. Supp. 2d at 1379 (S.D. Fla. 2006)). Courts have held rhetorical hyperbole precluded defamation actions for statements such as calling an individual a "retard," *No Witness, LLC v. Cumulus Media Partners, LLC*, No. 1:06-CV-1733 JEC, 2007 U.S. Dist. LEXIS 83761, at *16 (N.D. Ga. Nov. 13, 2007) (applying Georgia defamation law); stating an individual was "an accomplice to murder," *Rivera*, 292 F.3d 695; referring to a professional basketball player as a being "thugged out" and a "gangsta," *Fortson*, 434 F. Supp. 2d 1369; or referring to an individual's claims as a "total con job," *Clifford v. Trump*, 339 F. Supp. 3d 915 (C.D. Cal. 2018) (applying Texas defamation law).

The court decides whether an alleged defamatory statement is one of fact or opinion/rhetoric as a matter of law. *Fortson*, 434 F. Supp. 2d at 1379. Context is "paramount" for this analysis; the court must examine the statement in its totality and the context in which it was uttered or published in addition to considering all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published. *Id.* (citing *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981)). "In determining if the statement(s) are reasonably capable of a defamatory meaning, the Court must examine how a reasonable person would have interpreted the statements." *Jones v. Am. Broad. Cos.*, 694 F. Supp. 1542, 1552 (M.D. Fla. 1988).

The alleged insult by the male flight attendant is not actionable for defamation since it constitutes rhetorical hyperbole. Assuming again that the phrase was actually expressed, there is no reasonable basis to conclude that any person who heard the statement would actually

12

understand the comment to be factual assertion, *i.e.*, Plaintiffs were mentally disabled individuals who were Jewish. Indeed, the actions by the third-party witness who allegedly overhead the statement evidence as much. This individual approached Plaintiffs after the flight landed to tell them of the claimed comment, demonstrating he understood it to be an insult and not a literal fact.  As the Court in *No Witness, LLC* held when facing a similar issue, "No reasonable person would understand statements that plaintiff is a "retard" . . . as being literal statements of fact, or as implying statements of fact about the plaintiff. These statements are ultimately immature name-calling." 2007 U.S. Dist. LEXIS 83761, at *17.

The Fifth Circuit provided fitting explanation of the limits of defamation based on crass comments in *Curtis Publishing Co. v. Birdsong* where the court was faced with a libel claim based on the use of the phrase "those bastards":

> It is not entirely clear whether the plaintiffs are alleging that by the use of the phrase "those bastards" the allegedly libelous article questioned the legitimacy of their birth. However this may be, it is perfectly clear that no reasonable person of ordinary intelligence could believe that the person whom the author of the article was quoting was accusing every member of the Mississippi Highway Patrol who was on duty at Oxford of having been born out of wedlock. On the contrary it is perfectly apparent that these words were used as mere epithets, as terms of abuse and opprobrium. As such they had no real meaning except to indicate that the individual who used them was under a strong emotional feeling of dislike toward those about whom he used them. Not being intended or understood as statements of fact they are impossible of proof or disproof. Indeed such words of vituperation and abuse reflect more on the character of the user than they do on that of the individual to whom they are intended to refer. It has long been settled that such words are not of themselves actionable as libelous.

360 F.2d 344, 348 (5th Cir. 1966); *see also Buckner v. Comput. Scis. Raytheon*, CASE NO. 91-631-CIV-ORL-22, 1993 U.S. Dist. LEXIS 21191, at *22 (M.D. Fla. May 14, 1993) (citing *Bruckner* and holding defendant calling plaintiff a "bitch" was not defamatory).

Similar to *Curtis Publishing*, any reasonable person hearing or reading the alleged comment by the flight attendant would understand it to reflect frustration with Plaintiffs and not

literal factual assertions. Plaintiffs' defamation allegation based on this statement is rhetorical hyperbole, and the Court should dismiss the claim.

> **ii.   Spirit's statements to police and comments to media do not constitute defamatory statements**

A communication is "defamatory" if it tends to "harm the reputation of another by lowering him or her in the estimation of the community" or it is "one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business, reputation, or occupation." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108–09 (Fla. 2008). The words of the statement used "are not to be construed or taken in their mildest or most grievous sense"; rather, the statement should be read "as the common mind would understand it" and "considered in it natural sense without a forced or strained construction." *Tillett v. BJ's Wholesale Club, Inc.*, No. 3:09-cv-1095-J-34MCR, 2010 U.S. Dist. LEXIS 79443, at *17–19 (M.D. Fla. July 30, 2010).

Plaintiffs claim that Spirit's statements to police that Plaintiffs were "noncompliant," "made a big fuss," and would not listen to flight crew, and that Spirit's response to media stories stating that "records indicate that this guest ignored flight and ground crew instructions multiple times, beginning with the boarding process and continuing through landing" and that "Spirit employee informed law enforcement that the [Plaintiffs] had been cursing at the flight attendants" constitute actionable defamatory statements. But these statements do not give rise to hatred, ridicule, or contempt for Plaintiffs; they simply express that Plaintiff were disruptive, did not follow instructions, and used profanity while flying with Spirit. These are benign activities that would not cause Plaintiffs to suffer reputational damage in the community. Moreover, reading these statements shows that they are merely factual expressions that reflect Spirit's records of Plaintiffs' actions during flight. There is nothing defamatory about providing this information. *See Tillett v. BJ's Wholesale Club, Inc.*, No. 3:09-cv-1095-J-34MCR, 2010 U.S.

14

Dist. LEXIS 79443, at *19 (M.D. Fla. July 30, 2010) (holding media statement was non-defamatory when it merely restated request made under company guidelines).

In particular to the defamation claim regarding media comments, allowing Plaintiffs to proceed on these bases is particularly troubling considering Plaintiffs themselves have sought media attention for the matter, likely in an effort to create pressure and extort a settlement.[6] Spirit's responses to media inquiries have been factually accurate in an effort to defend itself against this meritless litigation.[7] The Court should not reward Plaintiffs by finding these benign responses to be actionable. The Court should dismiss Plaintiffs' defamation claim.

## IV.    CONCLUSION

Plaintiffs bear the burden to plead facts with sufficient particularity that allows Spirit and the Court to determine that relief is plausible and not just possible. However, Plaintiffs fail to provide sufficient facts that show their claims of race discrimination and defamation are anything more than speculative. The Court should grant Spirit's motion to dismiss in its entirety.

---

[6]    There is a small amount of irony in that Spirit could have responded to media inquests by stating that Plaintiffs' litigation appears to be an extortion tactic and Spirit's statement would be viewed as rhetorical hyperbole. *See G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC*, 2004 U.S. Dist. LEXIS 9480, at *2 (S.D.N.Y. May 27, 2004) (holding defendant media interview stating plaintiff's litigation approached extortion was rhetorical hyperbole and not actionable for defamation).

[7]    The evidence will show that Spirit's records and statements concerning Plaintiffs' actions before and during flight are accurate and that Plaintiffs were unruly and disruptive.

303977617v1 1020193

*Sternberg and Beck v. Spirit*
Motion to Dismiss

DATED:  July 2, 2019

| **Andrew M. Gordon** | **Kevin R. Coan** |
|---|---|
| Andrew M. Gordon | Kevin R. Coan |
| Florida Bar No. 68886 | Pro Hac Vice |
| agordon@hinshawlaw.com | kcoan@hinshawlaw.com |
| HINSHAW & CULBERTSON LLP | HINSHAW & CULBERTSON LLP |
| One East Broward Boulevard, Suite 1010 | 333 South Seventh Street, Suite 2000, |
| Ft. Lauderdale, FL 33301 | Minneapolis, MN 55402 |
| Telephone: 954-467-7900 | Telephone: 612-334-2789 |
| Facsimile: 954-467-1024 | Facsimile: 612-334-8888 |
| Attorneys for Defendant, Spirit Airlines, Inc. | Attorneys for Defendant, Spirit Airlines, Inc. |

303977617v1 1020193